IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

Vs.                                                     Criminal No. 12-159 MCA

KIMBERLY ROMERO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's *Motion to Dismiss Petition for Revocation of Supervised Release, to Release Defendant From Custody, and for Defendant to be Reinstated to Underlying Term of Supervised Release*, filed June 16, 2017. [Doc. 172]

**THIS MATTER** is further before the Court upon the *Petition for Revocation of Supervised Release* [Doc. 154] The Court heard oral argument on the *Motion* and held an evidentiary hearing on the *Petition* on July 11, 2017. The Court also invited extensive briefing on the legal issues raised in Defendant's *Motion to Dismiss*.

At the conclusion of the hearing on July 11, 2017, the Court took under advisement the legal issues raised in the *Motion to Dismiss* and proceeded to take evidence on the *Petition*. Having considered the parties' submissions, the evidence presented at the hearing, the record, and the relevant law, the Court concludes that the *Motion* is not well taken and shall be denied. The Court further concludes that the Government has proven, by a preponderance of the evidence, that Defendant violated the

1

mandatory condition that she not commit another federal, state or local crime, all as explained below.

**BACKGROUND**

Defendant was serving a term of supervised release when a criminal complaint was filed against her by the Bernalillo County Sheriff's Department alleging that she had committed the crime of Abuse of a Child resulting in great bodily harm, contrary to NMSA 1978, Section 30-6-1(D) (a first degree felony), and the crime of Conspiracy to Commit Abuse of a Child resulting in great bodily harm, contrary to NMSA 1978 Section 30-28-2 (a second degree felony). In connection with that complaint, Defendant was arrested by the Sheriff's Department on April 5, 2017; she was released the next day. The Court was advised of these circumstances when the United States Probation Office (USPO) filed a *Petition for Revocation of Supervised Release* on April 7, 2017. [Doc. 154] In the *Petition for Revocation*, the USPO alleged that Defendant had violated a mandatory condition of supervised release—namely the prohibition against committing "another federal, state, or local crime." [Doc. 154] A copy of the state court criminal complaint was not attached to the Petition, but was tendered as an exhibit at the July 11, 2017 evidentiary hearing.

Based upon the *Petition for Revocation* and an attached supplement (entitled *Violation Report*) in which the conduct alleged to underlay the state charges was described, this Court issued a warrant upon which Defendant was arrested on April 11, 2017. [Doc. 154; Doc. 154-1] After an initial appearance before a Magistrate Judge on April 12, 2017, Defendant was remanded to the custody of the United States Marshall's

service; and on April 13, 2017, a preliminary detention revocation/detention hearing held by a Magistrate Judge resulted in an *Order of Detention Pending Revocation Hearing*. [Doc. 163] Defendant was subsequently released to a halfway house on July 12, 2017. Before a final revocation hearing could be held, Defendant filed the present *Motion to Dismiss*.

In support of her *Motion*, Defendant alerted the Court to the fact that the state charges were dismissed *without prejudice* on June 12, 2017. [Doc. 172 ¶ 8] It remains unclear to this Court exactly why the state charges were dismissed, but it is suggested by Defendant that the state prosecutors were not prepared to proceed to a preliminary hearing within the time mandated by applicable state court rules. [Doc. 182 p. 2] The actual reason for the dismissal of the state charges is immaterial to this Court's analysis under the circumstances of this case. However, this Court is nonetheless concerned about the *Petition*'s failure (on its face) to recite any facts which would support the alleged violations of a local, state or federal law. It is the experience of this Court in more than fifteen years that a petition alleging violations of conditions contain on its face, at minimum, a statement of factual allegations supporting the alleged violation. This requirement is simply good and proper pleading practice. Rarely, if at all, has the government ever asked the Court to rely on statements contained in a Violation Report in support of the alleged violation. In this case, what the Government relies upon for factual support is the document appended to the *Petition*, - a two page narrative prepared by the assigned Probation Officer titled *Violation Report.* [Doc. 183 p. 1-2] The Government contends that the statements set forth in the *Violation Report* are sufficient to satisfy the

3

requirement that sufficient facts be pled so as to place Defendant on notice as to the basis for the alleged violation. [Doc. 183 p. 4] On the other hand, Defendant asserts that as a consequence of the dismissal, there "no longer exists" a basis for concluding that she violated the conditions of supervised release by committing a federal, state or local crime. [Doc. 172 ¶ 10] Defendant does not argue that facts set forth in the *Violation Report* should not be considered part of the *Petition* for purposes of pleading a basis for the alleged violation(s).

Rather, Defendant relies on the fact of the state court dismissal and the consequent lack of any pending criminal charges. [Doc. 172 p. 3] At the Court's July 11, 2017, evidentiary hearing, and in written closing arguments, Defendant advanced two additional theories in support of her *Motion*: (1) a due process argument that, by omitting a specific "statutory reference" from the *Petition for Revocation*, the US Probation Office did not provide Defendant with adequate notice of the basis for revocation; and (2) an attack on the sufficiency of the evidence presented by the Government to support revocation. [Doc. 182] In the ensuing analysis, each of these arguments is addressed in turn.

**ANALYSIS**

    **THE MOTION TO DISMISS**

1. **The Court May Revoke Defendant's Supervised Release Regardless of the fact that the State Court Charges Have Been Dismissed**

Under 18 U.S.C. Section 3563(a)(1), which governs conditions of probation, and Section 3583(d), which governs the conditions of supervised release, "a mandatory

condition of probation and supervised release is that the defendant not commit another federal, state, or local crime. A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." U.S.S.G. § 7B1.1 cmt. n.1. In other words, "[a] conviction is not a prerequisite to the revocation of probation[,]" and "a district court may revoke probation when [it is] reasonably satisfied that the probationer has violated a condition of [her] probation." *United States v. Fleming*, 9 F.3d 1253, 1254 (7th Cir. 1993). Accordingly, the fact that the charges brought against Defendant in state court were dismissed without prejudice does not, as a matter of law, preclude the Court from revoking Defendant's supervised release if supported by the evidence. *See United States v. Malloy*, 394 Fed.Appx. 550, 551 (11th Cir. 2010) ("[D]istrict courts may revoke a defendant's supervised release based on conduct that state officials choose not to prosecute.").

**2. Defendant Received Adequate Notice to Satisfy Due Process Requirements**

Defendant posits that, because the *Petition for Revocation* did not reference the specific statutes that Defendant was alleged to have violated, it did not comport with her due process right to notice of the basis for revocation. [Doc. 182 p. 2-3] The Court is not persuaded.

"Due Process protections extend to supervised release revocation hearings, and adequate notice is a part of these protections." *United States v. Mullane*, 480 F. App'x 908, 910 (10th Cir. 2012). But a defendant in a supervised release hearing is not entitled to the same protections owed a defendant in a criminal proceeding. *Id.* And, in the Tenth Circuit, a petition for revocation does not necessarily have to include notice of "exactly

5

which state or federal statutes have been violated[.]" *Id.* at 911. Rather, it is sufficient that the Defendant is notified of the fact that she was charged with an offense and that she is given notice of the evidence that the Government intends to introduce to prove the violation. *Id.* If the defendant believes that the revocation petition is too vague, she may request a more detailed notice or seek more time to prepare her defense prior to the revocation hearing. *Id.* In the view of this Court, this practice is in accord with good pleading protocol.

    The *Petition for Revocation* provided that revocation was sought based upon "a Criminal Complaint filed by Bernalillo County Sheriff's Department . . . [upon which Defendant had been] arrested . . . for Count 1: Abuse of a Child (Results in Great Bodily Harm, first degree felony), and Count 2: Conspiracy to Commit Abuse of a Child (Results in Great Bodily Harm, second degree felony)." [Doc. 154 p.1] As noted above, a copy of the state court criminal complaint was not attached to the Petition. Rather, the statements describing the alleged unlawful activity were contained in an attachment to the Petition entitled *Violation Report*. This *Report* was prepared by a probation officer. [Doc. 154 p. 3-4] The statements contained in the *Violation Report* clearly put Defendant on notice of specific acts or omissions underlying the alleged unlawful conduct. Under these circumstances, the fact that the *Petition for Revocation, on its face,* omitted reference to the numeric chapter and section associated with the relevant state statutes is a mere technicality. Defendant or her counsel could easily have discerned the missing information by referring to the New Mexico statutes or by seeking clarification from the

Government.  *Mullane*, 480 F. App'x at 911.   In light of *Mullane*, the omission of the numeric chapter and section does not rise to the level of a due process violation.

## THE MERITS OF THE ALLEGED VIOLATION

**The Government's Evidentiary Presentation Reasonably Supports Revocation**

Defendant was charged in a New Mexico State Court criminal complaint with abandonment or abuse of a child resulting in great bodily harm contrary to NMSA 1978, Section 30-6-1(D); and conspiracy contrary to NMSA 1978 Section 30-28-2 based upon conduct described in an arrest warrant affidavit accompanying the criminal complaint. [Ex. 16]  Although the criminal complaint was not attached to the *Petition*, it was tendered as an exhibit at the July 11th evidentiary hearing.  Section 30-6-1(D)  provides that "[a]buse of a child consists of a person knowingly, intentionally or negligently[1], and without justifiable cause, causing or permitting a child to be: (1) placed in a situation that may endanger the child's life or health; [or] (2) tortured . . . or cruelly punished[.]"  The New Mexico Supreme Court has recognized that *"causing* child abuse is synonymous with inflicting the abuse, [while] *permitting* child abuse refers to the passive act of failing to prevent someone else—a third person—from inflicting the abuse."  *State v. Nichols*, 2016-NMSC-001, ¶ 33, 363 P.3d 1187, 1193.  In other words "causing and permitting abuse correlate with primary and secondary responsibility for the victim's injury." *Id.*

---

[1] "Negligently" in this context refers to criminal negligence.  *Santillanes v. State*, 1993-NMSC-012, ¶ 29, 849 P.2d 358, 365.  "That is, to satisfy the element of negligence [in the context of the child abuse statute, the required standard of] proof [is] that the defendant knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." *Id.*

7

"By including both theories in the statute, the Legislature ensured that both active and passive abusers would be held equally responsible." *Id.*

The New Mexico Court of Appeals has recognized that the defendant's presence when the child was injured, her knowledge of a pattern of abuse, or evidence showing that she had reason to suspect the child would be abused, and failed to act to prevent it, exemplify proof that the defendant "permitted the abuse to occur." *State v. Leal*, 1986-NMCA-075, ¶ 20, 723 P.2d 977, 981, *overruled on other grounds by Santillanes v. State*, 1993-NMSC-012, 849 P.2d 358. Additionally, where there is evidence demonstrating that the defendant knew that a third person previously abused a child and, it may be inferred, understood the risk of future abuse concomitant with leaving the child alone with the abuser, such evidence permits a finding of guilt of negligently permitting child abuse. *See State v. Kuykendall*, No. 32,612, 2014 WL 5782937, at *1-3 (N.M. Ct. App. 2014) (affirming the defendant's conviction of negligently permitting child abuse resulting in the death of her son where the defendant left her children alone with her boyfriend who had physically abused them on several prior occasions). The passive act of "permitting" child abuse can also take the form of a failure to seek help or to take "any action to abate [the abuse] before or once it started." *See State v. Williams*, 1983-NMCA-107, ¶ 13, 670 P.2d 122, 124 (upholding a conviction for negligently permitting child abuse where the evidence showed that the child had been repeatedly beaten by her mother's husband, and the mother failed to take action to abate the beating—for example by seeking help, calling neighbors, or taking "other action"), *overruled on other grounds by Santillanes*, 1993-NMSC-012, 849 P.2d 358.

Turning to the facts of this case as they were presented at the July 11, 2017, evidentiary hearing, the Court finds as follows. Defendant had a boyfriend named Cain Suarez. [Tr. 39] Defendant and her three-year old son (Child) lived together with Suarez, whom Child called "Dad" and "Daddy." [Tr. 64-65] On at least three occasions prior to the incident of abuse at issue in this case, the Children, Youth, and Family Services Department (CYFD) investigated reports that Child bore signs of physical abuse. [Tr. 70-73] Although the reports were deemed "unsubstantiated" by CYFD,[2] Suarez was implicated by Child as the perpetrator of the injury-causing abuse in each instance. [Id.]

The incident giving rise to the pending *Petition for Revocation* began with Defendant asking Suarez to help her "discipline" Child. [Tr. 66] To effect this "discipline" Suarez took Child upstairs, while Defendant remained downstairs. [Tr. 40] Defendant heard Suarez ask what happened at school that day, but she did not hear Child respond. [Tr. 103] She then heard Suarez remove his belt from his pants. [Id.] Before she went upstairs "to see what was going on," Defendant heard Suarez hit Child with the belt five or six times. [Tr. 40, 103-04] When she finally went upstairs, Defendant observed Suarez use his belt to strike Child's bare skin twice more. [Tr. 40-41] Although she had already heard Suarez strike Child with the belt five or six times, Defendant did not attempt to prevent the two additional strikes. [Tr. 40, 58] Later, when

---

[2] Alyssa Pierce, the CYFD investigator involved in this case testified that "unsubstantiated" in the context of a child abuse investigation "simply [means that CYFD] can't prove one way or the other what happened." [Tr. 34-35, 73] She testified, further, that it is "very common" for reports of abuse of young children who are unable to tell you what happened be deemed unsubstantiated. [Tr. 73]

asked by the CYFD investigator why she did not intervene, Defendant said that she had been "in shock."  [Tr. 40-41]  As a result of having been beaten with the belt, Child was severely bruised from the middle of his back to his knees, and also on his left forearm.  [Tr. 43, 48, 50]  The bruises indicated that Child had been beaten with both the strap of the belt and with the buckle.  [Tr. 108]

Viewing the foregoing facts in light of relevant New Mexico precedent, the Court concludes, by a preponderance of the evidence, that Defendant engaged in conduct proscribed by Section 30-6-1(D).  That is, it may reasonably be inferred, and the Court does infer, that Defendant knew that Suarez had physically abused Child on more than one occasion prior to this incident.   [Tr. 70] *See Leal*, 1986-NMCA-075, ¶ 20 (stating that where the defendant has knowledge of past abuse, it is permissible to infer that she understood the risk of further abuse associated with leaving the child alone with the abuser).  Thus, when Defendant asked Suarez to help discipline the child, a reasonable inference is that Defendant understood that Suarez's method of "discipline" would likely involve physical punishment. *See Kuykendall*, 2014 WL 5782937, at *1-3 (holding that the defendant's act of leaving a child alone with her boyfriend notwithstanding his history of abusing the child supported a conviction for permitting child abuse).

Defendant was put on notice of Suarez' potential for abusive behavior.  Nevertheless, she permitted Suarez to take Child upstairs to be "disciplined" while she remained downstairs, and she continued to remain downstairs even though she heard Suarez remove his belt and strike Child with it five or six times.  In other words, Defendant not only failed to take any action to abate the prospective punishment *before* it

10

occurred—for example by asking Suarez to "discipline" Child in her presence, by appropriate means, or by instructing him to refrain from physical discipline, but she also failed to take action once the abuse started—choosing instead to passively permit Child to be stricken with a belt seven or eight times. *See Williams*, 1983-NMCA-107, ¶ 13 (failing to take action to abate abuse before or once it started may constitute "permitting" child abuse).

**CONCLUSION**

The Court is reasonably satisfied that Defendant has violated a condition of her supervised release. For the reasons set forth above, Defendant's *Motion to Dismiss* will be denied. As explained above, the Government has met its burden at trial in establishing by a preponderance of the evidence that Defendant violated a previously imposed Mandatory Condition that she not commit another federal, state or local crime.

**IT IS THEREFORE HEREBY ORDERED** that Defendant's *Motion to Dismiss Petition for Revocation of Supervised Release, to Release Defendant From Custody, and for Defendant to be Reinstated to Underlying Term of Supervised Release*, filed June 16, 2017 [Doc. 172] be and hereby is **DENIED**.

**IT IS FURTHER ORDERED AND DECLARED** that the Government has proven, by a preponderance of the evidence presented at hearing on July 11, 2017, that Defendant Kimberly Romero violated the mandatory condition which required that she not commit another federal, state or local crime. Kimberly Romero has violated a Mandatory Condition previously imposed by the Court.

**IT IS FURTHER ORDERED** that Defendant's conditions of supervised release be and hereby are revoked. The Court will next proceed to sentencing.

**SO ORDERED** this 25th day of August, 2017, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**